IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DAMIAN A. WEIR,

    Petitioner

    v.

MARY E. SABOL,[1]

    Respondent.

: CIVIL NO. 4:CV-09-1938
:
: Hon. John E. Jones III

## MEMORANDUM

April 15, 2010

**THE BACKGROUND OF THIS MEMORANDUM IS AS FOLLOWS:**

Petitioner Damian A. Weir ("Petitioner" or "Weir"), a detainee of the United States Immigration and Customs Enforcement ("ICE") Office, who is confined at the York County Correctional Facility in York, Pennsylvania, initiated this action by filing a Petition for Writ of Habeas Corpus ("Petition") pursuant to the provisions of 28 U.S.C. § 2241. (Doc. 1.) In his Petition, filed on October 7, 2009, Weir alleges that his detention has become unreasonable and that he therefore is entitled to either

---

[1] In his Petition, Weir names Mary E. Sabol, Thomas R. Decker, John P. Torres, Janet Napolitano, and Eric Holder as Respondents. Pursuant to 28 U.S.C. § 2243, the writ of habeas corpus shall be directed to the petitioner's custodian. The warden of the prison where the petitioner is held is considered the custodian for purposes of a habeas action. *See Rumsfeld v. Padilla,* 542 U.S. 426, 442 (2004). Accordingly, the only proper Respondent is Mary E. Sabol, the Warden of York County Prison. She will be deemed to be the sole Respondent for our present purposes.

immediate release or a hearing at which the government bears the burden of justifying his continued detention.

Pursuant to this Court's October 22, 2009 Order, on November 12, 2009, Respondent filed a Response to the Petition (Doc. 8), along with Exhibits (Doc. 8-2) and the Declaration (Doc. 8-3) of Kent J. Frederick, Chief Counsel for the Philadelphia Office of ICE. On November 30, 2009, Petitioner filed a document entitled "Petitioner's Supplemental Writ of Habeas Corpus." (Doc. 12.) However, in the introduction, Petitioner states that he is responding to Respondent's opposition to his Petition and he goes on to respond to arguments raised in the Response. Therefore, the document is construed as Petitioner's Reply. Because the Petition is fully briefed, it is ripe for disposition. For the reasons set forth below, the Court finds that Weir has not demonstrated that his continued detention pending the conclusion of his removal proceedings is unreasonable, and therefore, the Petition will be denied.

**I.     FACTUAL BACKGROUND**

    **A.     Weir's Criminal Conviction and Immigration Detention**

Weir, a native and citizen of Jamaica, was admitted to the United States on a B-2 "visitor visa" on July 7, 1997. (Doc. 8-2 at 47[2], Ex. 4, Additional Charges of Inadmissibility/Deportability.) The B-2 visitors visa authorized Weir to remain in the

---

[2]Citations to page numbers refer to the page number on the CM/ECF electronic record.

United States for six (6) months. (*Id.*) However, Weir remained in the United States after his B-2 visa expired on January 6, 1998. (*Id.*) He "re-entered" the United States as a lawful permanent resident on September 21, 2005. (*Id.* at 2, Ex. 1, Notice to Appear and Record of Deportable/Inadmissible Alien.)

On August 4, 2008, Weir was convicted in the Lackawanna County Court of Common Pleas for the offense of Possession Access Device Knowing Counterfeit in violation of 18 Pa. Cons. Stat. § 4106 (2007). (*Id.* at 7-13, Ex. 2, Criminal Records.) On August 19, 2008, Weir was convicted of the same offense in the Monroe County Court of Common Pleas. (*Id.* at 14-19.) Both convictions stemmed from Weir's use of a counterfeit credit card to fraudulently purchase thousands of dollars worth of products from several different Best Buy stores. (*Id.* at 7-19.)

On October 2, 2008, following his entry of a guilty plea, Weir was sentenced by the Monroe County Court of Common Pleas to twelve (12) months probation. (*Id.* at 26-45, Ex. 3, Sentencing Order and Documents.) At the time of his sentencing, ICE had placed a detainer on Weir, and therefore, the Court's sentencing Order directed that he be remanded to the Sheriff for transfer to ICE. (*Id.* at 26.) On the same date, Weir was served with a Notice to Appear ("NTA") charging him with removability under section 237(a)(2)(A)(i) of the INA, 8 U.S.C. § 1227(a)(2)(A)(i), because he was convicted of two crimes of moral turpitude within five years of his last admission.

(*Id.* at 5, NTA.) On August 13, 2009, an additional charge was added against Weir based on his unauthorized B-2 visa overstay. (*Id.* at 47, Ex. 4, Additional Charges of Inadmissibility/Deportability.) Weir has remained in ICE custody since October 2, 2008. (Doc. 8, Response, at 14.)

### B. Weir's Removal Proceedings

On October 21, 2008, Weir made his first appearance before an immigration judge. (Doc. 8-3, Frederick Decl., ¶ 6.) Weir requested a continuance of the proceedings in order for his recently-retained attorney, James Howard, to appear. (*Id.*) The hearing was adjourned to November 25, 2008. (*Id.*)

On October 22, 2008, counsel for the Department of Homeland Security ("DHS") submitted the government's proposed exhibits in support of the allegations and charges set forth in the NTA. (*Id.* ¶ 7.)

On November 25, 2008, Weir appeared before the immigration court without counsel. (*Id.* ¶ 8.) Based on the government's evidence, the immigration judge determined that Weir was ineligible for cancellation of removal under INA section 240A(a)(1), 8 U.S.C. § 1229b(a)(1), because Weir did not meet the requirement of the statute that he be "an alien lawfully admitted for permanent residence for not less than five years". (*Id.*; Doc. 8, Response, at 15.)

On December 23, 2008, Weir again appeared before the immigration court

without counsel. (Doc. 8-3 ¶ 9.) The immigration judge called Attorney Howard, but was only able to reach his answering machine. (*Id.*) As a result, the hearing was adjourned to January 2009. (*Id.*) On the same day, Weir's attorney filed a motion for a bond hearing and change of venue to New York with the immigration court. (*Id.*)

On January 29, 2009, Weir appeared before the immigration court via video teleconferencing with his attorney, who appeared via telephone. (*Id.* ¶ 10.) Attorney Howard informed the court that Weir intended to seek adjustment of status and a waiver under section 212(h) of the INA, 8 U.S.C. § 1182(h).[3] (*Id.*) In response, the DHS attorney pointed out that Weir is statutorily ineligible for a former section 212(h)(A)(2) waiver because he did not have the requisite seven years of lawful residency prior to being placed into removal proceedings.[4]

Attorney Howard then requested that Weir instead be allowed to apply for cancellation of removal under section 241A(a)(1) of the INA, 8 U.S.C. § 1229b, even

---

[3]Section 212(h) of the INA provides that the Attorney General may, in his discretion, waive the application of subparagraph 212(a)(2)(A)(i)(I) (crimes involving moral turpitude), 212(a)(2)(B) (multiple criminal convictions), 212(a)(2)(D) (prostitution and commercial vice), 212(a)(2)(E) (certain aliens who have asserted immunity from prosecution), and 212(a)(2)(A)(i)(II) (an offense of simple possession of 30 grams or less of marijuana).

[4]Title 8 U.S.C. 1182(h) provides that a section 212(h) waiver shall not be provided to an alien "who has previously been admitted to the United States as an alien lawfully admitted for permanent residence if either since the date of such admission he has been convicted of an aggravated felony *or he has not lawfully resided continuously in the United States for a period of not less than seven years* immediately proceeding the date of initiation of proceedings to remove him from the United States." 8 U.S.C. § 1182(h) (emphasis added).

5

though the immigration had found Weir ineligible for this type of relief at the November 25, 2008 hearing that Howard did not attend. (*Id. ¶¶* 8, 10.) The immigration judge again denied that request on the basis that Weir was statutorily ineligible. (*Id. ¶* 10.) Howard then sought a bond for Weir. (*Id.*) That request was denied in light of the fact that Weir's detention is mandatory under 8 U.S.C. § 1226(c). (*Id.*) Finally, Howard informed the court that he would seek to have one of Weir's convictions set aside, and requested a continuance to review the issue. (*Id.*) The immigration judge granted Howard's request and adjourned the hearing until February 10, 2009. (*Id.*)

On February 10, 2009, Weir appeared before the immigration court. (*Id.* ¶ 11.) Weir's counsel again requested a continuance of proceedings, and the hearing was adjourned to February 24, 2009. (*Id.*)

On February 24, 2009, Weir and his counsel appeared before the immigration judge. (*Id.* ¶ 12) Howard did not present any evidence that he had been able to reverse any of Weir's convictions as he had been given an opportunity to attempt to do at the January 29 proceeding. (*Id.*) Instead, he argued that Weir's criminal convictions were out of a single scheme, and thus amounted to a single, non-removable crime involving moral turpitude, rather than two crimes involving moral turpitude, which gives rise to removability. (*Id.*) DHS counsel responded that Weir's

6

offenses were committed on different dates, and that Weir was convicted on different dates in different counties. (*Id.*) The immigration judge found that the crimes were not a single scheme. (*Id.*) Howard then informed the immigration judge that he had filed an immigrant visa petition on Weir's behalf. (*Id.*) The DHS attorney reiterated the government's position that first was stated at the January 29 proceeding that, even if the petition were approved, Weir still would not be able to adjust his status, as he was ineligible for waiver under section 212(h) of the INA. (*Id.*; *see supra* note 4.) The hearing was adjourned to March 24, 2009 for a status hearing. (*Id.*)

On March 24, 2009, the status hearing was held, and Howard informed the immigration court that Weir's visa petition had been approved. (*Id.* ¶ 13.) The immigration judge adjourned the hearing to April 6, 2009 to allow Weir to file his adjustment of status application and related documents. (*Id.*)

Howard failed to appear at the April 6, 2009 hearing. (*Id.* ¶ 14.) At a status hearing on April 20, 2009, Howard appeared and informed the immigration judge that he had mailed documents related to Weir's visa petition to the immigration court. (*Id.* ¶ 15.) The DHS attorney again stated the government's position that Weir was not eligible for adjustment of status because he did not meet the seven-year lawful residence requirement of section 212(h) of the INA. (*Id.*; *see supra* note 4.) The immigration judge noted the government's position and set the case for a hearing on

August 12, 2009 on the merits of Weir's applications for relief. (*Id.*)

On August 12, 2009, the immigration court held a merits hearing on Weir's claims for relief from removal. (*Id.* ¶ 16.) At the hearing, the immigration judge found that the charges of removal had been proven. (*Id.*) The DHS attorney again stated the government's position that Weir was statutorily ineligible for waiver, as he overstayed his nonimmigrant visa, and thus did not reside lawfully in the United States for seven years prior to being placed in removal proceedings. (*Id.*) The immigration judge rejected this argument and allowed Weir to proceed with his waiver application because Weir applied for adjustment of status in 1998. (*Id.*)

However, after testimony was taken from Weir, the court clerk brought to the court's attention the recently issued decision of the Board of Immigration Appeals ("Board") in *Matter of Rotimi*, 24 I. & N. Dec. 567 (BIA 2008). In that case, the Board determined that an alien has not "lawfully resided" in the United states for purposes of qualifying for a waiver of inadmissibility under section 212(h) of the INA, 8 U.S.C. § 1182(h), during any periods in which the alien was an applicant for asylum or for adjustment of status, and lacked any other basis on which to claim lawful residence. 24 I. & N. Dec. 567, 2008 WL 2927589, *petition for review denied*, *Rotimi v. Holder*, 577 F.3d 133 (2d Cir. 2009). The immigration judge then adjourned the proceedings in order to give Howard time to determine if Weir had ever been a

8

conditional permanent resident, and if so, whether that status provided Weir with the seven years of lawful residence required for eligibility for a section 212(h) waiver. (*Id.*)

On August 13, 2009, upon request of the immigration judge, DHS counsel filed additional allegations of fact to the NTA, alleging that Weir entered the United States as a B-2 nonimmigrant visitor on July 7, 1997 with authorization to remain until January 6, 1998, and evidence that Weir remained in the United States beyond January 6, 1998 without authorization. (Doc. 8-3 ¶ 17.) Weir admitted these factual allegations in a subsequent hearing. (*Id.*)

On September 15, 2009, Weir appeared with counsel before the immigration court. (*Id.* ¶ 18.) The immigration judge determined that, under the precedential decisions of the Board in *Matter of Shan*, 23 I. & N. Dec. 754 (BIA 2005) and *Matter of Rotimi*, 24 I. & N. Dec. 567, Weir was not eligible for cancellation of removal or adjustment of status. (*Id.*) Howard then informed the immigration court for the first time that Weir would be seeking asylum and protection under the Convention Against Torture ("CAT"), even though Weir had never expressed a fear in previous proceedings that he would be persecuted or tortured if he returned to Jamaica. (*Id.*) The DHS trial attorney noted that Weir was ineligible for asylum because he had not filed his asylum application within one year of his entry into the United States. (*Id.*)

9

The immigration judge then asked Howard what basis Weir had to claim relief under CAT. (*Id.*) Howard stated that he did not recall. (*Id.*) The proceeding was adjourned to December 18, 2009 for a merits hearing on the remaining asylum and CAT claims asserted by Weir for relief from removal. (*Id.*; Doc. 8, Response, at 21.)

On November 9, 2009, DHS counsel filed a motion to expedite the merits hearing. (Doc. 8-3 ¶ 19.) The motion was pending as of the date of submission of the Response in this action. (*Id.*) According to the Immigration Court Information System ("ICIS"), provided by the Executive Office for Immigration Review ("EOIR"), on December 24, 2009, the immigration court granted voluntary departure. The ICIS also indicates that an appeal by Weir from the immigration court's order was received on February 1, 2010 and is pending as of the date of this Memorandum.

## II. DISCUSSION

Weir asserts that he is not subject to mandatory detention under 8 U.S.C. § 1226(c) because ICE did not take him into custody when he was released from criminal incarceration, but rather took him into custody on October 2, 2008 following his sentencing to one (1) year probation by the Monroe County Court of Common Pleas. (*See* Doc. 1, Petition, at 14-15; Doc. 12, Reply, at 2-3.) However, Title 8 U.S.C. § 1226(c) provides that "The Attorney General shall take into custody any alien who . . . (B) is deportable by reason of having committed any offense covered in

10

section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title." That section also provides that the Attorney General shall take custody "when the alien is released, *without regard to* whether the alien is released on parole, supervised release, *or probation*, and without regard to whether the alien may be arrested or imprisoned again for the same offense." *Id.* (emphasis added). Because Weir was convicted of two crimes of moral turpitude within five years of his last admission, and therefore was charged with removability under section 237(a)(2)(A)(i) of the INA, 8 U.S.C. § 1227(a)(2)(A)(i), (*see* Doc. 8-2 at 5, Notice to Appear), he was properly taken into custody at the time of his sentencing to probation by the Monroe County Court of Common Pleas and is subject to mandatory detention under 8 U.S.C. § 1226(c). Because his appeal from the immigration court's December 24, 2009 Order is pending as of the date of this Memorandum, there is no final order of removal as of this date, and Weir continues to be subject to mandatory detention under § 1226(c). *See, by contrast,* 8 U.S.C. § 1231(a)(1)(A-B) (providing that Attorney General must remove an alien ordered deported from the United States within 90 days of the date when the order is final, either administratively or by the decision of a court). Therefore, Weir's detention is properly analyzed under section 1226(c).

In *Alli v. Decker,* 644 F. Supp. 2d 535, 541 (M.D. Pa. 2009), this Court "construed § 1226(c) as authorizing mandatory detention for the period of time

11

reasonably necessary to promptly initiate and conclude removal proceedings." Further, we held that, "[i]f an alien detained pursuant to § 1226(c) makes a showing via a habeas petition that detention is no longer reasonable, the alien must be afforded a hearing before the habeas court at which the government bears the burden of justifying continued detention based on traditional bail factors such as the alien's risk of flight and potential danger to the community." *Id.* We then adopted a case-specific reasonableness standard for analyzing whether a habeas petitioner subject to the mandatory detention provisions of § 1226(c) should be afforded a bond hearing. *Id.* at 541-43. In adopting that standard, we noted some of the factors to be considered in applying the reasonableness standard, including whether the detention has continued beyond the average time necessary for completion of removal proceedings; the probable extent of future removal proceedings; the likelihood that removal proceedings actually will result in removal; and the conduct of both the alien and the government during the pendency of removal proceedings. *Id.* at 543-45.

While we observed that the factors we set forth in *Alli* were by no means exhaustive, *id.* at 543, a consideration of these factors in this case reveals that Weir has not made the necessary showing that his detention is unreasonable. Weir suggests that the length of his detention is in and of itself sufficient to warrant habeas relief in the form of his immediate release or a bond hearing. (*See* Doc. 12, Reply, at 4.)

12

Although the length of Weir's detention (approximately one (1) year at the time of filing the Petition) raises constitutional concerns, we cannot ignore that his prolonged detention has been a direct result of his and his counsel's actions in his removal proceedings. Weir and his attorney sought a continuance of proceedings on at least four (4) occasions, either formally as a request for a continuance (October 21, 2008; February 10, 2009), or to permit Weir's attorney to pursue additional legal theories (January 29, 2009; August 12, 2009). (*See* Doc. 8-3, Frederick Decl.,¶¶ 6, 10, 11, 16.) In addition, on two occasions, Weir's counsel failed to appear and could not be reached by telephone, which resulted in the court having to adjourn the proceedings (December 23, 2008; April 6, 2009). (*See id.* ¶¶ 9, 14.)

In his Reply, Weir argues that he merely was exhausting every legal avenue available to him. (*See* Doc. 12 at 5.) As we recognized in *Alli,* aliens "should not be effectively punished for pursuing applicable legal remedies." *Alli*, 644 F. Supp. 2d at 545 (quoting *Oyedeji v. Ashcroft*, 332 F. Supp. 2d 747, 753 (M.D. Pa. 2004)). However, a review of Weir's removal proceedings reveals that his counsel pursued remedies for which Weir clearly was ineligible. In particular, on January 29, 2009, Weir's counsel reasserted a defense under section 212(h) of the INA even though the immigration judge already had ruled that this defense was unavailable to Weir at a November 25, 2008 hearing at which Weir's counsel did not appear. (*See* Doc. 8-3,

13

Frederick Decl.,

¶¶ 8, 10.) Weir's counsel then asserted a new defense based on the possibility that Weir may be able to have one of his convictions overturned. (*See id.* ¶ 10.) The proceedings then were delayed for about a month in order to allow Weir's counsel to pursue that new avenue. (*See id.* ¶¶ 10-12.) When he apparently did not succeed in having any of Weir's convictions overturned, Weir's counsel then advanced the argument that Weir's crimes arose out of a "single scheme" even though Weir clearly committed the crimes on different dates in different places and was convicted in two different counties. (*See id.* ¶ 12.) When that attempt failed, Weir's counsel then pursued an immigrant visa petition on Weir's behalf, even though the approval of that petition would not allow Weir to adjust his status in light of the fact that he was ineligible for a waiver under section 212(h) of the INA. (*See id.*; *supra* note 4.) The pursuit of this remedy for which Weir was ineligible further delayed the proceedings from February 24, 2009, when his counsel first notified the immigration court that he had filed the immigrant visa petition, until September 15, 2009, when the immigration judge ultimately ruled that Weir was not eligible for cancellation of removal or adjustment of status. (*See* Doc. 8-3 ¶¶ 12-18.) Weir's counsel then raised for the first time that Weir had a fear of being tortured upon his return to Jamaica, and therefore would be pursuing protection under the CAT. (*See id.* ¶ 18.) The pursuit of this new

14

remedy, which also was unavailable to Weir because he had not filed an asylum claim within one (1) year of his entry into the United States, delayed the proceedings until December 2009. (*See id.*)

In contrast, there is no indication from the record of Weir's removal proceedings that any delay is attributable to the government. The record reveals that DHS counsel promptly submitted the government's proposed exhibits in support of the allegations and charges set forth in the NTA on October 22, 2008, just twenty (20) days after Weir was served with the NTA and taken into ICE custody, and just one (1) day after his first appearance before the immigration court. (*See id.* ¶¶ 3, 6, 7.) The record also shows that the government did not seek any continuances of the proceedings, and in fact filed a motion to expedite the December 18, 2009 merits hearing. (*See id.* ¶ 19.)

The Court also has considered that Weir does not have a strong defense to removal inasmuch as he has pursued the defenses discussed above, and none of these defenses have been accepted by the immigration court. Further, the immigration court has ordered Weir's removal. Although that order is not yet final because Weir's appeal to the Board is pending, the Court has considered that the Jamaican Consulate routinely cooperates with ICE in providing travel documents to effectuate the repatriation of its nationals, and thus, in the event he does not prevail on appeal, his

removal appears likely. (*See id.* ¶ 20.) The present procedural posture of this case also means that Weir's detention now has a fixed and finite duration. There is no indication at this point that his appeal will not be disposed of in a timely fashion, and the resolution of that appeal will result in the conclusion of his detention. If Weir is successful on appeal, he will be released from custody. If Weir is not successful on appeal, his removal order will become final, and he will be removed to Jamaica. If the latter situation occurs, and Weir's removal does not occur in a timely manner, he will be entitled to avail himself of the protections afforded to detained aliens facing a final order of removal. *See Zadvydas v. Davis*, 533 U.S. 678 (2001).

Based on the foregoing considerations, the Court concludes that Weir has not established that his continued detention is unreasonable, and the Petition will be denied. An appropriate Order will enter on today's date.